UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: MATTER OF THE COMPLAINT OF
JWN CONSULTING, LLC and
JEFFERSON NEAL,                                                    Petitioners.

Civil Action No. 3:17-cv-120-DJH

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Petitioners JWN Consulting, LLC and Jefferson Neal filed this action under the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, seeking to limit their liability for a boating accident in which a passenger on their boat was killed. (Docket No. 1) Claimant Joel Shaw has moved to dismiss the case, arguing that the Court lacks subject-matter jurisdiction because the accident did not occur on navigable waters. (D.N. 22; *see* D.N. 22-1) Petitioners do not dispute that Lake Cumberland, where the accident took place, is non-navigable. (*See* D.N. 23, PageID # 79, 88) Nevertheless, they maintain that the Court has jurisdiction under the Limitation of Liability Act. (*Id.*) The Court agrees with Shaw that it lacks jurisdiction and will therefore grant his motion to dismiss.[1]

**I.    Discussion**

Federal district courts have "original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Under the

---

[1] Although Shaw seeks dismissal on the ground that the Court lacks subject-matter jurisdiction, he repeatedly states that his motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), as opposed to Rule 12(b)(1) or 12(h)(3). (*See, e.g.*, D.N. 22, PageID # 70; D.N. 22-1, PageID # 72-73) Regardless of this apparent confusion, the Court has an "independent obligation" to confirm its jurisdiction, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted), and must therefore determine whether dismissal is required under Rule 12(h)(3).

1

Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 30101, admiralty jurisdiction "extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." § 30101(a). The general test for admiralty tort jurisdiction requires a party seeking to invoke that jurisdiction to "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Specifically,

> [a] court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved[]" to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows "a substantial relationship to traditional maritime activity."

*Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65 & n.2 (1990)) (internal citations omitted).

Pursuant to the Limitation of Liability Act, "the liability of the owner of a vessel for any claim, debt, or liability described in [the Act] shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a). Claims and liabilities covered by the statute include "those arising from . . . any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." § 30505(b). The Act further provides that "[t]he owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under [the Act]," § 30511(a), as Petitioners have done here.

In *Richardson v. Harmon*, 222 U.S. 96 (1911), the Supreme Court held that the Limitation Act (as then codified) extended to "non-maritime" torts. *Id.* at 106. According to Petitioners, *Richardson* remains binding precedent and stands for the proposition that "limitation applie[s] to all claims arising out of a vessel's operations, whether the tort occurred on navigable

water or not." (D.N. 23, PageID # 79) However, an overwhelming majority of courts have held that "the Limitation Act does not confer admiralty jurisdiction over petitions that arise from incidents that . . . did not occur on or over navigable waters."[2] *See MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 143 (2d Cir. 2011) (collecting cases and joining Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits in so holding). While the Sixth Circuit has yet to address the issue, district courts within this circuit have generally followed the majority rule.[3] *See, e.g.*, *Hickam v. Segars*, 905 F. Supp. 2d 835, 841 (M.D. Tenn. 2012); *In re Wepfer Marine, Inc.*, 344 F. Supp. 2d 1120, 1123-24 (W.D. Tenn. 2004); *In re Fields*, 967 F. Supp. 969, 975 (M.D. Tenn. 1997).[4] And a footnote in *Sisson* suggests that the Supreme Court does not share Petitioners' reading of *Richardson*. The *Sisson* Court noted:

> Sisson has also argued throughout this litigation that the Limited Liability Act provides an independent basis for federal jurisdiction. Respondents contend that the Act does not create jurisdiction, but instead may be invoked only in cases otherwise within the maritime jurisdiction of § 1333(1). We need not decide which party is correct, for even were we to agree that the Limited Liability Act does not independently provide a basis for this action, § 1333(1) is sufficient to confer jurisdiction.[5]

---

[2] As noted in Shaw's reply, Petitioners' counsel recognized this imbalance of authority in a published article. (*See* D.N. 24, PageID # 92 (citing James K. Mondl, *Litigating Recreational Boating Cases*, 55 St. Louis Bar Journal, no. 2 (Fall 2008)))

[3] Contrary to Shaw's assertion, however, this Court did not hold in *Lynch v. McFarland*, 808 F. Supp. 559 (W.D. Ky. 1992), "that the Limitation Act does not apply to incidents occurring upon non-navigable waterways." (D.N. 24, PageID # 90) *Lynch* was not a limitation-of-liability case; rather, it was a personal-injury case brought by a plaintiff allegedly injured on the defendants' boat. *See* 808 F. Supp. at 560. The Court did find in *Lynch* that Cumberland Lake is non-navigable, *id.* at 563, a point not in dispute here. (*See* D.N. 23, PageID # 79, 88)

[4] Petitioners cite *In re Houseboat Starship II*, No. 2:05-0086, 2005 U.S. Dist. LEXIS 36237 (M.D. Tenn. Dec. 12, 2005), as an example of a court within the Sixth Circuit following *Richardson*. (*See* D.N. 23, PageID # 23, PageID # 81-82) However, while the *In re Houseboat Starship II* decision did state that "[the] *Richardson* rule retains its viability," it did so only briefly and in dictum, having already concluded that the incident at issue—which occurred on navigable waters—gave rise to admiralty jurisdiction. 2005 U.S. Dist. LEXIS 36237, at *6; *see id.* at *3-*6.

[5] *Sisson* arose out of an incident that occurred when a boat was docked at a marina on "a navigable waterway." 497 U.S. at 360.

*Id.* at 359 n.1 (internal citation omitted). If *Richardson* provided the answer to this question, presumably the *Sisson* Court would have said so. *See MLC Fishing*, 667 F.3d at 142-43 ("The Supreme Court has indicated that whether the Limitation Act provides an independent basis for federal subject matter jurisdiction is an open question, but has declined t[o] resolve the issue." (citing *Sisson*, 497 U.S. at 359 n.1)).

Petitioners rely heavily on *In re Bernstein*, 81 F. Supp. 2d 176 (D. Mass. 1999), which, like this case, arose out of a boating accident on a non-navigable lake. *See id.* at 177, 179. The court there concluded that although "the age of *Richardson*, the Supreme Court's arguable disregard for its own holding, and the overwhelming disapproval by the Courts of Appeals present[ed] a compelling rationale for rejecting a theory of independent jurisdiction under the [Limitation of Liability] Act" and "the manifest history of the Act demonstrate[d] its inapplicability to the circumstances of" the case at hand, the court was bound by *stare decisis* to follow *Richardson*, which dictated a finding of independent jurisdiction under the Act. *Id.* at 182.

The Court is not persuaded by the reasoning of *In re Bernstein*. As discussed above, no fewer than seven circuit courts of appeals have analyzed this issue at length and reached the opposite conclusion, and the Supreme Court itself has indicated that it does not view *Richardson* as requiring the Limitation Act to be treated as an independent source of jurisdiction. *See Sisson*, 497 U.S. at 359 n.1. Unlike many other statutes, the Act does not contain language clearly conferring—or even suggesting that it confers—jurisdiction. *Cf., e.g.*, 28 U.S.C. § 1346(b) (providing that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States"); 29 U.S.C. § 185(a) (providing that suits for violation of labor contracts "may be brought in any district court of the United States having jurisdiction of the

parties, without respect to the amount in controversy or without regard to the citizenship of the parties"). Rather, it merely provides for limitation of liability in certain instances, 46 U.S.C. § 30505, and creates a cause of action for vessel owners to enforce that limitation, § 30511(a).

Moreover, since *Richardson*, Congress has enacted the Extension of Admiralty Jurisdiction Act, which specifies that admiralty jurisdiction extends to cases involving damage or injury on land if the harm was "caused by a vessel on navigable waters." 46 U.S.C. § 30101(a). This extension of jurisdiction covers the factual scenario at issue in *Richardson*, where the owners of a barge sought to limit their liability after the barge collided with a bridge. *See* 222 U.S. at 99-100. Thus, it appears that the Extension of Admiralty Jurisdiction Act "subsumed *Richardson*'s expansion of the [Limitation] Act within the greater aegis of admiralty jurisdiction," with the result that "the reach of the [Limitation] Act and admiralty jurisdiction are once more coextensive." *Seven Resorts v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995) (declining to "extend the scope of the [Limitation] Act beyond the parameters of modern admiralty jurisdiction . . . . to encompass torts occurring on non-navigable waterways with no relation to commercial shipping"); *see also MLC Fishing*, 667 F.3d at 144 (concluding that "the Limitation Act does not confer federal admiralty jurisdiction over any action not already encompassed within the Extension Act's jurisdictional grant"). The Court thus concludes, consistent with the weight of authority, that because the accident giving rise to this case occurred on non-navigable waters, subject-matter jurisdiction is lacking.

## II. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

ORDERED that Shaw's motion to dismiss (D.N. 22) is **GRANTED**. This matter is **DISMISSED** for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3) and **STRICKEN** from the Court's docket. All pending motions are **DENIED** as moot.

March 26, 2018

**David J. Hale, Judge**
**United States District Court**